**Edward Losee, Appellee, v. Arthur Brunson, Appellant.**

**Gen. No. 4,934.**

1. CONTRACTS—*what tends to show ambiguity in.* The harsh or unreasonable results flowing from a particular construction of a contract should cause the court to search the contract diligently to see if it is capable of some more reasonable construction which the parties really intended.

2. CONTRACTS—*quasi-partnership agreement construed.* A particular contract set forth in *haec verba* in the opinion, which was a contract of employment of a *quasi*-partnership nature, is considered and construed.

Bill in equity. Appeal from the Circuit Court of De Kalb county; the Hon. CHARLES A. BISHOP, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed April 14, 1908.

CARNES, FAISSLER & COCHRAN, for appellant.

L. B. OLMSTEAD, for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

Brunson, a clothing merchant, hired Losee, an ex-

perienced salesman in that line, to act as buyer and salesman, and they entered into a written contract, the body of which was as follows:

"Articles of Agreement entered into between Arthur Brunson, party of the first part and Edward Losee, party of the second part, this 25 day of January, 1904, Witnesses that the party of first part agrees to pay to the party of the second part the sum of $60 (sixty dollars) per month and one-half of the profits of the business less the salary, and the party of the second part agrees to do the buying and overseeing of the stock to the best of his ability."

Losee began his service for Brunson under the contract on February 7, 1904, and continued thereunder and was paid $60 per month till December 31, 1904, when Brunson sold out his business and thus terminated the contract. On February 7, 1905, Losee filed a bill in equity against Brunson for an accounting of the profits of the business, which the bill alleged Brunson had refused him, and for a decree for the payment of one-half of said profits to Losee. Brunson answered, denying the construction placed upon the contract by Losee, and asserting that the meaning of the contract was that Brunson and Losee should share equally in the profits, but that Brunson guaranteed that Losee's one-half thereof should not be less than $60 per month, and that in ascertaining the profits the $60 per month should not be regarded as an expense; and defendant alleged that there were no profits and that the business was conducted at a loss. The answer was also made a cross-bill, in which Brunson alleged that by the oral contract between the parties, made before the written contract was drawn, Brunson was to contribute the entire capital and Losee his skill as a salesman and a buyer, and that Losee should receive one-half the profits, and that Brunson should guarantee that Losee's one-half of the profits would not be less than $60 per month; that if said written contract bears the meaning attributed to it by the bill

of complaint, then it does not express the actual agreement between the parties, and the cross-bill prayed for its reformation. The answer to the cross-bill asserted that the written contract had the meaning attributed to it by the original bill, and that it truly expressed the actual agreement between the parties. The cause went to a master, who took and reported the proofs with his conclusions and a statement of the account. His findings were favorable to Losee. Exceptions to the report were overruled, and Losee had a decree for $258.88 and costs, from which Brunson prosecutes this appeal.

We conclude that one who reads the written contract without a knowledge of the negotiations which preceded it would naturally understand by it that Brunson agreed to pay Losee a salary of $60 per month and in addition thereto to pay him one-half of the profits of the business, and that in ascertaining the profits the salary was to be deducted from the gross proceeds as an expense. Losee contends that that is the only meaning of which the words are capable and that that meaning is so plain and certain that there is no room for any construction that would give the contract a different meaning, and that to reform the contract as sought by Brunson would be to overturn the contract the parties made and to write an entirely different contract for them. The master and the court seem to have taken this view. The period of service under the contract was a little less than eleven months. As we understand it, the master found a profit of the business during that time of $517.76 and gave Losee one-half thereof. Brunson put in the entire capital of some $6,000 or $7,000 and assumed all the risk of loss in the business and put in his own time as salesman and buyer, while Losee only put in his time, without the investment of any capital or liability for any losses. Yet the result of the decree, if executed, would be that Losee will receive $911.38, while Brunson will receive $258.88 for the same period. Of course Brun-

son had power to make such a contract, and if he intentionally agreed to pay his employe so much more than he would receive himself, or if he carelessly made a contract to that effect without due consideration of the result which it would produce, the contract should be enforced against him; but employers are not likely to make contracts bearing so unreasonably against themselves, and when the true meaning of the contract is in dispute the harsh or unreasonable results flowing from one construction should cause the court to search the contract diligently to see if it is capable of some more reasonable construction which the parties really intended.

The construction of the contract above stated as apparently the more natural is reached by assuming that it is the natural meaning of the words employed that "the profits of the business less the salary" is the thing which is to be divided and of which Losee was to have one-half. But it is not an impossible construction to assume that "one-half of the profits of the business" was that from which the salary was to be taken. This would be but another way of stating the contention of Brunson in his answer and cross-bill. In order to authorize either such a construction of the contract or such a reformation as would cause it to have such a meaning, Brunson offered evidence, first as to the oral agreement which preceded the writing, and second as to a construction placed upon said contract by both parties after the contract relation terminated.

Brunson testified that the contract between himself and Losee was verbally made at a meeting at an earlier date than the written contract, and that they then agreed that Losee should receive a guaranteed salary of $60 per month, and if one-half the profits should exceed $60 per month, Losee was also to receive the difference between one-half the profits and $60 per month. Losee did not testify what said prior verbal agreement was, but did testify that the writing was

made on January 25th at his request and that at the previous meeting they had settled the terms of his employment and that those terms were not materially changed on January 25th. The contract was written by Brunson, while Losee prompted and made suggestions.

Before this suit was begun, the parties submitted their differences to three arbitrators, Danielson, Dupee and Newton, who entered upon the work of arbitration. When the arbitrators came to this contract they disagreed as to its meaning, and thereupon called in Brunson and Losee together and asked them what the contract meant. Danielson and Dupee were called to testify to statements made by Brunson and Losee in answer to this inquiry. Danielson testified that Brunson stated that Losee was to have one-half of the profits of the business on a guaranteed salary of $60 per month; if one-half of the profits exceeded $60 per month, Losee was to get the difference, and if one-half the profits did not equal $60 per month he was to get just the $60; and that Losee agreed exactly with Brunson as to what the contract meant. On cross-examination Danielson testified that Losee said that he would not consider a position unless Brunson would guarantee him at least $60 per month, and if he could work the business up to a point where one-half of the profits would exceed that he was to have that difference. Dupee testified that Losee answered the arbitrators that as he understood the agreement he was to have a guaranteed salary of $60 per month, whether there were any profits or not, and if one-half the profits of the business amounted to more than that he was to have one-half the profits less the $60 and that the $60 was not to be carried to expense account. Dupee further testified that both Brunson and Losee said that Losee was to have a guaranteed salary of $60 per month, and one-half the profits less the $60 guaranteed salary. On cross-examination of Dupee a letter was put in evidence which he had previously written

in answer to an inquiry as to what Brunson and Losee had said to the arbitrators, in which letter he stated that Brunson and Losee both agreed that Losee was to have a guaranteed salary of $60 per month and one-half the profits remaining after deducting Losee's salary. This was practically the language of the letter and equally subject to two constructions.

If the foregoing were all the oral testimony on this subject, we should hold that justice and the proofs required either that the contract be construed to conform to Brunson's contention or else that it be reformed so as to express that meaning. But Brunson during his examination was further asked what his understanding of the agreement was and he answered: "He was to have one-half of the profits if the profits exceeded $60 per month, but he was to have a guaranteed salary of $60 per month; in case the profits did not exceed $60 he was just to receive his guaranteed salary." He was then asked what he stated to the arbitrators as his understanding of the agreement when he and Losee were called before them, and he answered: "I told them that my understanding was that Mr. Losee was to receive one-half the profits if the profits exceeded the salary. In case the profits did exceed the $60 per month, then the $60 was to be deducted." It will be seen that this is entirely inconsistent with all the other oral evidence which we have above stated, and is in harmony with the view taken by the court below. In this last stated evidence Brunson testifies, not that the salary was to be deducted from one-half the profits, or that if one-half the profits exceeded $60 per month Losee was to have that excess, but he says that if the entire profits exceeded the $60 per month, then Losee was to receive one-half of said profits. In other words, the salary was to be taken out of the gross proceeds, and the profits thus ascertained were to be divided. While that is inconsistent with the other evidence given by Brunson and with the testimony of Danielson and Dupee, yet Brunson was

the defendant seeking to establish an unusual construction of the words employed in the written contract, and Brunson having given this construction to it in the evidence last quoted, we think the court might well conclude either that that was the true version of what the contract meant or else that his contradictory testimony as to the prior negotiations and as to the conversation before the arbitrators showed that his own mind was in confusion as to what the contract was. With this last evidence by Brunson in the record, we are of opinion the conclusion of the master and the court as to the meaning of the contract should not be disturbed.

It is contended that the master made errors in stating the account as to certain items and that as the result thereof the amount of profits found by the master is too great. Without discussing these items in detail, we think it sufficient to say that we think the master's conclusions warranted by the testimony and the stipulations which were used as evidence.

The decree is therefore affirmed.

*Affirmed.*